## Cecil v. Commonwealth.

(Decided November 22, 1910.)

### Appeal from Nelson Circuit Court.

1. Incest—Statutory Provision—Carnally Knowing Daughter.—Ky. St., section 1219, is as follows: "Whoever shall carnally know his or her father, mother, child, sister or brother, knowing such relation to exist, shall be guilty of felony and confined in the penitentiary not less than two nor more than twenty-one years. Held: This statute was passed for the good of society—the elevation and betterment of mankind. It cannot be that it was

intended to punish illicit intercourse between father and daugh-
ter, if the daughter was born in lawful wedlock, and not punish
such intercourse where the daughter was born out of lawful
wedlock.   In each case the relationship is the same, and the
statute was intended to prevent sexual intercourse between per-
sons occupying this relationship.

2.  Same—Moral consideration—Ecclesiastical  Courts.—Incest  was
    not an offense at common law, but the ecclesiastical courts pun-
    ished those found guilty of this practice.  It was regarded as an
    offense against good morals, and for this reason was punished by
    the ecclesiastical courts.  But aside from any moral consideration,
    such a practice is shocking to our sense of decency, propriety and
    good citizenship, and any parent found guilty of it should be
    punished as the law directs, whether the child is a legal or a
    natural child.

E. E. McKAY, for Appellant.

JAMES BREATHITT, Attorney General: TOM B. McGREGOR,
Assistant Attorney General, for Appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Appellant was indicted, tried and convicted of the
crime of incest.   Two grounds are relied upon for re-
versal, first, that appellant and Mollie Cecil, the mother
of the accusing witness, Jose Cecil, were never married,
and the said Jose Cecil was not his child within the mean-
ing of the statute; and second, because of errors com-
mitted by the trial court in failing to properly instruct
the jury.

The statute under which the prosecution was had, Sec.
1219 Kentucky Statutes, reads as follows:

"Whoever shall  carnally know his or her father,
mother, child, sister or brother, knowing such relation to
exist, shall be guilty of felony, and confined in the peni-
tentiary not less than two nor more than twenty-one
years."

From a reading of this statute it is plain that, before
a conviction can be secured, three things must be estab-
lished: First, the relationship of father and child, second,
that the father knew of the existence of this relationship,
and third, that he had sexual intercourse with the child.
Instruction No. 1 given by the court followed substan-
tially the wording of the statute and placed before the
jury in a clear and concise form the questions at issue.
This instruction and the reasonable doubt instruction

were the only instructions given. These instructions covered the case fully and no others were necessary, unless the contention of appellant's counsel is correct in this, that the word "child" as used in this statute means "lawful" child rather than "natural" child.

This statute was passed for the good of society, the elevation and betterment of mankind. It cannot be that it was intended to punish illicit intercourse between father and daughter if the daughter was born in lawful wedlock, and not punish such intercourse where the daughter was born out of lawful wedlock. In each case the relationship is the same, and the statute was intended to prevent sexual intercourse between persons occupying this relationship. If the child was begotten by the man, she was his daughter none the less because he failed to marry her mother. His blood courses through her veins just the same as though he had married her mother, and it is because of this blood relationship that statutes have been enacted in most every civilized country prohibiting the marriage of parent and child and visiting upon them severe punishment for carnally knowing each other. Incest was not an offense at common law, but the ecclesiastical courts punished those found guilty of this practice. It was regarded as an offense against good morals, and for this reason was punished by the ecclesiastical courts. But, aside from any moral consideration, such a practice is shocking to our sense of decency, propriety and good citizenship, and any parent found guilty of it should be punished as the law directs, whether the child is a legal or a natural child. This was the conclusion reached by the trial judge and the construction which he placed upon the meaning of the word "child" in the statute, and hence he refused to give an instruction authorizing an acquittal unless the proof showed that the child, Jose Cecil, was born in lawful wedlock or her parents married each other after her birth. The evidence shows that the appellant and the mother of Jose Cecil were never married, though they were living together as man and wife at the time of her birth and had been so living for some two years or more prior to that date. During all the years of her minority he lived with her mother, occupying in the family the relation of a husband and father. Jose called him "papy," and he spoke of her to his friends and neighbors and acquaintances as his child. On

this evidence the jury was authorized to find that Jose was his child and that he knew her to be such.

The only remaining question is, was he guilty of the incestuous act. She swears that he was and details with minuteness the circumstances surrounding it. The morning following this act she complained to her mother of it and charged her father therewith, and about nine months thereafter she gave birth to a child. It is true, appellant denied all of these charges so far as his connection therewith was concerned; but he did not deny that he had his daughter to accompany him to the place where she alleges the act was committed; and there are other circumstances connected with it brought out in the evidence calculated to substantiate and corroborate the testimony of the girl. At all events, it was a question for the determination of the jury. They found him guilty, and no good reason is shown why that finding should be disturbed.

Judgment affirmed.