No. 16,090.

In the matter of the People in the Interest of Hill,
Respondent.

HILL *v.* THE PEOPLE.
(198 P. [2d] 450)

Decided October 4, 1948.

Mr. J. Nelson Truitt, for respondent, plaintiff in error.

Mr. J. Glenn Donaldson, Mr. Richard F. Ryan, for defendant in error.

*En Banc.*

Mr. Justice Alter delivered the opinion of the court.

Ellen M. Splude, on the 15th day of April, 1946, filed a complaint in the county court, charging that her mother, to whom we hereinafter refer as respondent, was "so insane or distracted in her mind, as to endanger her own person or property, or the person or property of another, or others, if allowed to go at large." A commission, duly appointed, reported that respondent was suffering from senile dementia, whereupon she was committed to the custody of her daughter. Subsequently respondent was confined in the Colorado State Hospital at Pueblo until October 5, 1946, when she was discharged therefrom by transfer order, and, at the time of the hearing to which reference is hereinafter made, was in a convalescent home in Denver.

On August 15, 1947, a petition, supported by the affidavit of a licensed physician, was filed, praying that the original proceeding in lunacy be reopened or that it be adjudged that respondent had been restored to reason. A commission was appointed to reexamine respondent, and on August 25 filed its report, finding therein that respondent was not restored to reason, which report of the commission was approved by the court. Neither respondent nor her attorney were then advised of the commission's finding nor the court's approval. In October following another hearing was granted respondent, at which witnesses were produced in her behalf. Thereafter the commission made a report, the date of which was October 2, 1947, in which report the commission

found that respondent was not restored to reason, but no notice of this finding was given either respondent or her attorney until November 26, 1947, whereupon respondent filed a petition, praying that the questions considered by the commission be tried by a jury. The court denied respondent a jury trial; however, it did order that a hearing would be had before the court on December 18, 1947.

At the hearing before the court, the only question presented was whether respondent had been restored to reason. The two physicians, constituting the commission, testified that respondent was not restored to reason, while two regularly licensed physicians, one chiropractor, one nurse, who had had professional experience with insane persons, and six lay witnesses testified that in their opinion respondent was restored to reason and that she was mentally sound and fully capable of taking care of her property. At the conclusion of the hearing the court made findings, among which are the following: "That the respondent here is not insane in the usual sense of the word." And, "As far as being insane at the present time, the court says she is not insane, as that word is usually used. The evidence clearly bears that out in the court's opinion." Further, however, it was found: "The court is not satisfied that the respondent, if living alone, by herself, unattended, unassisted would be able to manage her property from a financial standpoint at this time. Therefore, the order and judgment of the court is that the respondent is not restored to reason; that the contention of the respondent is denied, and that the report of the doctors as submitted, will have to stand."

A motion for a new trial was filed, at the hearing of which the court inquired of counsel whether it was bound by the findings of the commission, and it was the contention of the assistant city attorney that the court was so bound, and, consequently, that the hearing of the court upon the question of respondent's restoration to reason was beyond the court's jurisdiction.

In this connection the position of the assistant city attorney is stated to be:

"We believe the findings of the trial court, although made without authority and without right, are unquestionably correct and should be upheld.

"We also believe that the findings of two reputable physicians sitting as a Lunacy Commission on a petition for restoration are *binding and conclusive* in the absence of fraud, malice or prejudice.

"As required by Sec. 18A, Chap. 105 C.S.A. 1935 as amended [sec. 1, c. 174, p. 472, S.L. 1945], the Court appoints two reputable physicians of its own choosing. Their appointment is an act of the Court having jurisdiction of the entire proceedings. They act as an arm of the Court, a fact finding body or commission. And as we construe the act, the Court is bound *by their findings and their report,* and must enter an order confirming the same." (Italics ours)

█ We have held that the jurisdiction of the *county court* under the lunacy statute is a continuing one and that all proceedings, judgments and orders thereunder are open to modification or change at any time on petition of any interested party, and that the *county court* in which the original proceedings were had has jurisdiction to set them aside in their entirety or to modify or change the commitment orders without a specific reservation of jurisdiction. *In re Rainbolt,* 64 Colo. 581, 172 Pac. 1068; *Hultquist v. People,* 77 Colo. 310, 236 Pac. 995; *Isham v. People,* 82 Colo. 550, 262 Pac. 89.

█ In section 3, chapter 105, '35 C.S.A., are two separate and distinct provisions under which a complaint in lunacy may be filed. The first is in cases where the person against whom complaint is made is "so insane or distracted in his mind as to endanger his own person or property, or the person or property of another, or others, if allowed to go at large." This, it will be noted, was the specific charge in the instant case, and there is no allegation in the complaint charging that respondent is

"by reason of old age, disease, weakness of mind, feebleness of mind, or from any other cause, incapable, unassisted, to properly manage and take care of himself or his [her] property, and therefore would be likely to be deceived or imposed upon by artful or designing persons;" which is the second provision of the statute justifying the filing of a complaint in lunacy.

At the time of the hearing the court found that respondent was not insane, in the usual sense of that word, and this finding was made, notwithstanding the report of the commission to the contrary; consequently, unless the court was powerless to do other than approve the report of the commission, it should have found and adjudged that respondent was restored to reason. If respondent was "insane," as that term is used in the first provision in section 3, supra, she should have been committed; it might logically be concluded that she was incapable of the management of her property, and, therefore, the appointment of a conservator would be warranted. If, however, respondent, "by reason of old age, disease, weakness of mind, feebleness of mind, or from any other cause" became incapable, unassisted, to properly manage and take care of herself or her property, and, therefore, would be likely to be deceived or imposed upon by artful or designing persons, it would not follow that she should be committed, notwithstanding which a conservator might properly be appointed. It should be borne in mind that in the instant case the charge was made under the first provision of section 3, supra, and the court had no jurisdiction to determine respondent's mental condition as set forth in the second provision of the section. If, and when, a charge under the second provision of section 3 is filed, respondent will be entitled not only to the opinion of a commission as in the statute provided, but, if dissatisfied with the findings and report of the commission and the court's approval thereof, will be entitled, upon timely application therefor, to have the question of her mental condition sub-

mitted to a jury, and if found by the jury to be sane, to a discharge.

█ The assistant city attorney makes the definite statement that the findings and report of the commission are *binding* and *conclusive* upon the court in restoration proceedings, but in this he is mistaken. Prior to the enactment of the 1945 amendment (S.L. '45, c. 174), the statute then in force and effect read in part: "If any reputable person present to the county court, of any county where any person is confined for treatment as a lunatic, or insane person, other than in the state insane asylum, and application in writing for the discharge of any such patient, setting forth that the said patient has been restored to reason, said court shall immediately cause the fact to be inquired of by two reputable physicians, to be appointed by the said court, at least one of whom shall not be officially connected with the institution, where said patient is confined, and if upon such inquiry it shall be found, that such person has been restored to reason he or she shall immediately be set at liberty." '35 C.S.A., c. 105, §18.

It should, however, be noticed that by the 1945 amendment, supra, this provision of the statute was changed so that the effective section in force at the time of the hearing in the present case read in part as follows: "Section 18 (a). If any reputable person shall present to the court through which a person has been adjudged insane or mentally incompetent, * * * an application in writing for the restoration of any such person, setting forth that said person has been restored to reason, supported by the certificate of a physician, said court shall immediately cause the facts to be inquired into by two reputable physicians to be appointed by the court, * * *. If upon such inquiry it shall be found *by the court* that such person so adjudged has been restored to reason an order of restoration shall forthwith be entered by the court * * *." (Italics ours)

It may be contended that prior to the 1945 amend-

ment—and as to this we express no opinion—the report made by the commission upon its inquiry had some binding effect on the court in rendering its findings and judgment, but under the 1945 amendment it is specifically provided that the finding shall be *"by the court;"* consequently, the findings of the commission are to be considered as advisory only, and have only the same weight, force and effect as do the answers of a jury to interrogatories submitted to them in an equity proceeding. There is nothing in the statute justifying a contention that the findings of a lunacy commission are binding upon the court.

When a person is no longer insane, he is restored to reason, and, consequently, when the court found respondent herein not insane as charged in the complaint, it was its bounden duty to order her discharged, and, in failing to do so, it committed error.

The judgment is reversed and the cause remanded to the county court with instructions to dismiss the action and discharge respondent.

MR. JUSTICE LUXFORD does not participate.