# CHARLESTON.

STATE *v.* OTTO SCARBROUGH

(No. 6322)

Submitted October 8, 1929.   Decided October 15, 1929.

*C. R. Harless* and *Kyle D. Harper,* for plaintiff in error.
*Howard B. Lee,* Attorney General, and *R. A. Blessing,* Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, Otto Scarbrough, was tried and convicted in the criminal court of Raleigh County, upon appeal from

a justice, under a warrant charging him with wilfully neglecting and refusing to provide for the support and maintenance of his illegitimate child in destitute and necessitous circumstances, in violation of Chapter 51, Acts 1917, as amended by Chapter 73, Acts 1925. This writ was awarded at his instance to the judgment, on the verdict, requiring him to pay monthly sums for the support and maintenance of the child.

The grounds relied on for reversal are: (1) That a justice has not jurisdiction to determine the paternity of an illegitimate child; (2) that the warrant is defective in that it does not state whether the mother is a single or married woman; (3) that the defendant could not have been legally convicted without first having been adjudged to be the father of the child; (4) that proof of previous knowledge on his part of the destitute and necessitous circumstances of the child was also necessary to sustain the prosecution; and (5) that Chapter 73, Acts 1925, is unconstitutional in so far as it authorizes the prosecution of a father for the non-support of his illegitimate child, as such jurisdiction is not within the title of the act.

The jurisdiction of the justice to punish the father for failing to support an illegitimate child includes the authority to determine the paternity of the infant. *State* v. *Bennett*, 90 W. Va. 477; *State* v. *Reed*, decided at this term.

The omission of the warrant to state whether the mother of the child was single or married is immaterial. There is an obligation on the father to support the child in either case. *State* v. *Reed*, cited.

The jury in its general verdict, under proper instructions submitting the issue on sufficient evidence, found the defendant to be the father.

Whether the defendant should have been apprised of the destitute and necessitous circumstances of the child prior to the institution of the prosecution, the evidence clearly establishes the fact that he had been so advised.

Chapter 51, Acts 1917 (section 16c, Chapter 144, Code), provides for the prosecution in the circuit, intermediate, criminal, and juvenile courts of "any husband who shall, without just cause, desert or wilfully neglect or refuse to provide

for the support and maintenance of his wife, in destitute or necessitous circumstances, or any parent who shall without lawful excuse, desert or wilfully neglect or refuse to provide for the support and maintenance of his or her (legitimate or illegitimate) child or children, under the age of sixteen years, in destitute or necessitous circumstances." Chapter 73, Acts 1925, confers jurisdiction upon the justice. The title of the Act reads: "An act to amend and re-enact chapter fifty-one of the acts of the legislature of West Virginia, one thousand nine hundred and seventeen, same being section sixteen-c, chapter one hundred and forty-four of Barnes' West Virginia code, one thousand nine hundred and twenty-three edition, relating to the desertion and non-support of wife and child, and authorizing extradition of persons accused of its violations." So that it gives a fair and reasonable index to the purposes of the act. Nothing more is required. *State* v. *Thompson*, 8 W. Va. 698. The word "child" should be construed as embracing legitimate and illegitimate issue. The language employed in the title of a statute must be construed in its most comprehensive and liberal sense favorable to the validity of the act. *State* v. *Furr*, 101 W. Va. 178. A similar statute was involved in the case of *Pearman* v. *People*, (Col.) 170 Pac. 192. It was there contended that the word "children" used in the title of the act did not include illegitimate issue so that the statute was unconstitutional in so far as it required fathers to support their illegitimate children because of the state constitutional provision, similar to ours (section 30, Article VI), requiring that no act shall embrace more than one object and that shall be expressed in the title. Answering this contention, the Court said: "This constitutional prohibition must receive a reasonable construction. Its primary purpose is to avoid surprise and fraud upon legislators and people in the enactment of laws and those over whom the laws are operative. This provision is sufficiently complied with so long as the legislation attacked is fairly germane to the subject-matter expressed in the title. * * * When the purposes of this act are considered, we are of opinion that its title is sufficiently broad to embrace illegitimate children. It applies to men, not necessarily married

men, and to compel them to support their children, not necessarily legitimate children. As here used the word 'children' should be construed in its broadest sense. In *Quattlebaum* v. *Triplett*, 69 Ark. 91, at page 94, 61 S. W. 162, at page 163, the court said: 'There is a distinction to be observed in the use of the word "child" in statutes passed for the protection of children, and its use in the law of descents and distribution. In the former case 'child' means a person of tender years, without regard to parentage, while in the law of wills and intestacy age has nothing to do with the question, and parentage everything.' This declaration applies here. It is immaterial who the mothers of the children are, the title is general as to children. The act is more specific and mentions an illegitimate child or children, all of whom are included in the word 'children' as used in the title of the act. This principle was applied in *Cecil* v. *Commonwealth*, 140 Ky. 717, 131 S. W. 781, Ann. Cas. 1912B, 501.''

The judgment is affirmed.

*Affirmed.*